# Illinois Official Reports

## Appellate Court

*Regions Bank v. Joyce Meyer Ministries, Inc.*,
2014 IL App (5th) 130193

| | |
|---|---|
| Appellate Court Caption | REGIONS BANK, d/b/a Regions Morgan-Keegan Trust, as Independent Administrator of the Estates of Sheri Coleman, Garett Coleman, and Gavin Coleman, Deceased, Plaintiff-Appellant, v. JOYCE MEYER MINISTRIES, INC., a Missouri Nonprofit Corporation, Defendant-Appellee (Christopher Coleman, Defendant). |
| District & No. | Fifth District<br>Docket No. 5-13-0193 |
| Filed | August 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a wrongful death action against the employer of a man who murdered his wife and two sons after using his work computer for several months to email death threats to himself, the decedents and his employer, the trial court properly dismissed the count filed by the administrator of the decedents' estates under a theory of negligent retention of the employee, since the complaint lacked sufficient factual allegations to establish that his continued employment was a substantial factor in the deaths; however, the counts based on the employer's negligent undertaking to protect the decedents from threatened harm and the corresponding survival claims were improperly dismissed, because the complaint adequately alleged that the employer failed to perform or negligently performed its voluntary undertaking to investigate the death threats made or received through the employer's communications systems and equipment and to provide security at decedents' home, especially when the anticipation of harm to them was objectively reasonable, and therefore, those counts were reinstated and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Monroe County, No. 11-L-14; the Hon. Richard A. Aguirre, Judge, presiding. |

| Judgment | Affirmed in part and reversed in part; cause remanded. |
|---|---|
| Counsel on Appeal | Antonio Romanucci, of Romanucci & Blandin, LLC, of Chicago, for appellant. |
| | Dennis M. Field, of Strellis & Field, Chtrd., of Waterloo, and S. Greg Pittman and Michael J. King, both of Winters & King, Inc., of Tulsa, Oklahoma, *pro hac vice*, for appellee. |
| Panel | JUSTICE CATES delivered the judgment of the court, with opinion. Presiding Justice Welch and Justice Chapman concurred in the judgment and opinion. |

## OPINION

¶ 1    The plaintiff, Regions Bank, d/b/a Regions Morgan-Keegan Trust, as independent administrator of the estates of Sheri Coleman, Garett Coleman, and Gavin Coleman, appeals from an order of the circuit court of Monroe County dismissing with prejudice its claims against the defendant, Joyce Meyer Ministries, Inc., on the ground that the plaintiff failed to state any claim upon which relief could be granted. For the reasons that follow, we affirm in part, reverse in part, and remand the case for further proceedings.

¶ 2    On May 5, 2009, Sheri Coleman and her young sons, Garett Coleman and Gavin Coleman (the decedents), were murdered in their home in Columbia, Illinois. Christopher Coleman, the husband of Sheri and the father of Garett and Gavin, was charged with and subsequently convicted of the murders. He was sentenced to life in prison without the possibility of parole for these crimes. On May 5, 2009, and for more than eight years prior, Christopher Coleman had been employed in high-level security positions by Joyce Meyer Ministries, Inc. It is alleged that in the months leading up to the murders, Coleman used his work computer to email death threats directed at himself, the decedents, and Joyce Meyer Ministries, Inc.

¶ 3    On May 4, 2011, the plaintiff filed a multicount complaint for wrongful death against Christopher Coleman, Joyce Meyer Ministries, Inc. (JMM), Joyce Meyer, and Daniel B. Meyer. Christopher Coleman has not entered an appearance in this case. Following a short period for discovery on the issue of personal jurisdiction, Joyce Meyer and Daniel Meyer were voluntarily dismissed from the case pursuant to a stipulation by the parties.

¶ 4    JMM entered its appearance and filed a motion to dismiss the counts against it pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)), on the ground that the plaintiff failed to state any claim upon which relief could be granted. The trial court granted JMM's motion, but permitted the plaintiff to amend the complaint.

¶ 5    The first amended complaint contains three counts against JMM. Count III alleges wrongful death under a theory of a negligent undertaking to protect the decedents from threatened harm. Count IV is the corresponding survival action. Count V is brought under a theory of negligent retention of the employment of Christopher Coleman. JMM renewed its

motion to dismiss all counts under section 2-615 of the Code for failure to state any claim upon which relief could be granted. In the motion, JMM argued that count III should be dismissed because it did not allege sufficient facts to establish that JMM undertook to protect the decedents from the harmful acts of a third party, and that count V should be dismissed because the plaintiff did not allege a logical connection between retaining Christopher Coleman as an employee and his murderous acts. After considering the briefs and arguments of counsel, the trial court granted JMM's motion and dismissed counts III, IV, and V of the first amended complaint with prejudice.

¶ 6        On appeal, the plaintiff contends that the trial court erred in dismissing with prejudice its claims against JMM. The plaintiff argues that the first amended complaint contains sufficient allegations of fact to establish duties owed by JMM to the decedents under theories of a voluntary undertaking and negligent retention.

¶ 7        At the outset, it is important to point out that this case comes to us on the pleadings, and that the only issue is whether the plaintiff's first amended complaint states a claim or claims against JMM upon which relief may be granted. A motion to dismiss brought pursuant to section 2-615 of the Code challenges the legal sufficiency of the complaint. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429, 856 N.E.2d 1048, 1053 (2006). In considering whether the allegations in the complaint are legally sufficient to state a cause of action, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts, and we construe the factual allegations in a light most favorable to the plaintiff. *Marshall*, 222 Ill. 2d at 429, 856 N.E.2d at 1053. A cause of action should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recover. *Marshall*, 222 Ill. 2d at 429, 856 N.E.2d at 1053. An order dismissing a cause of action with prejudice under section 2-615 is reviewed *de novo*. *Marshall*, 222 Ill. 2d at 429, 856 N.E.2d at 1053.

¶ 8        The claims against JMM are negligence-based. In order to state a cause of action for negligence, a complaint must allege sufficient facts to establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of the duty, and an injury proximately caused by the breach. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 421, 804 N.E.2d 519, 526 (2004). Whether a duty exists is a question of law for the court to decide. *Bajwa*, 208 Ill. 2d at 422, 804 N.E.2d at 526. Whether a duty was breached and whether the breach was a proximate cause of the plaintiff's injuries are questions of fact for a jury to decide. *Bajwa*, 208 Ill. 2d at 422, 804 N.E.2d at 526.

¶ 9        Initially, we consider whether the factual allegations in count III are sufficient to establish that JMM voluntarily undertook to protect the decedents from the criminal acts of a third person. Ordinarily, a person has no affirmative duty to protect another from harmful or criminal acts by a third person. *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 228, 745 N.E.2d 1166, 1178 (2000). Exceptions to this general principal have been recognized: (1) when the parties are in a "special relationship," *i.e.*, common carrier-passenger, innkeeper-guest, business invitor-invitee, or voluntary custodian-protectee, and the harmful or criminal acts were reasonably foreseeable; (2) when an employee is in imminent danger and this is known to the employer; (3) when a principal fails to warn an agent of an unreasonable risk of harm involved in the agency; and (4) when there is negligence in the performance of a voluntary undertaking. *Petersen v. U.S. Reduction Co.*, 267 Ill. App. 3d 775, 779, 641 N.E.2d 845, 848 (1994). The voluntary-undertaking exception is at issue here. In Illinois, this

exception has been narrowly construed and the duty imposed is limited by the extent of the undertaking. *Wakulich v. Mraz*, 203 Ill. 2d 223, 242-43, 785 N.E.2d 843, 855 (2003); *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 209, 399 N.E.2d 596, 599 (1979).

¶ 10    Sections 323 and 324A of the Second Restatement of Torts (Restatement (Second) of Torts §§ 323, 324A (1965)), both of which have been recognized in Illinois, address liability based on a voluntary undertaking to render services to another. See *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32, 605 N.E.2d 557, 560 (1992); *Pippin*, 78 Ill. 2d at 210-11, 399 N.E.2d at 599-600.

¶ 11    Section 323 of the Restatement provides as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts § 323 (1965).

¶ 12    Section 324A of the Restatement provides as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts § 324A (1965).

¶ 13    A plaintiff may allege nonfeasance or misfeasance in the performance of a voluntary undertaking. *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 996, 841 N.E.2d 96, 107 (2005). In the case of "nonfeasance," a plaintiff must allege facts to indicate (a) that the defendant voluntarily undertook to render services necessary for the protection of another person or took charge of another person's protection; (b) that the defendant failed to exercise reasonable care in that it wholly failed to perform the undertaking; and (c) that harm was suffered because of the other person's reliance on the defendant's undertaking. See *Bourgonje*, 362 Ill. App. 3d at 996, 841 N.E.2d at 107. In the case of "misfeasance," a plaintiff must allege facts to indicate (a) that the defendant voluntarily undertook to render services necessary for the protection of another person or took charge of another person's protection; (b) that the defendant negligently performed the undertaking; and (c) that the defendant's negligence increased the risk of the harm to the other person or that the plaintiff suffered harm due to his reliance on the undertaking. See *Wakulich*, 203 Ill. 2d at 244-46, 785 N.E.2d at 856-57; *Doe-3 v. White*, 409 Ill. App. 3d 1087, 1097-99, 951 N.E.2d 216, 227-29 (2011).

¶ 14    Mindful of these rules and legal principles, we consider the complaint at issue. The first amended complaint sets out a series of factual allegations that are generally applicable to all counts, followed by allegations specific to each count and theory of liability. The complaint is 21 pages in length and contains 80 paragraphs. For purposes of this decision, we will consolidate and summarize the basic allegations rather than restate them verbatim.

¶ 15    The complaint generally alleges that JMM employed Christopher Coleman in high-level security positions from November 2000 through May 5, 2009; that during the period of Coleman's employment, JMM enacted an electronic communications policy (E-Comm policy) which governed its employees' use of its electronic communications systems and equipment; that JMM's E-Comm policy prohibited its employees from sending or viewing inappropriate, obscene, harassing, or abusive images, language, and materials on its electronic communications systems and equipment; that pursuant to the E-Comm policy, JMM reserved the right to monitor and inspect communications sent, received, and stored on its electronic communications systems and equipment; and that JMM "management" had the sole discretion to take disciplinary action against the violators of said policy. It also alleges that from November 14, 2008, to May 5, 2009, Christopher Coleman created and transmitted via email harassing notes and death threats directed to himself, the decedents, and JMM, using his company-issued computer; that from November 14, 2008, to May 5, 2009, Christopher Coleman created harassing notes and death threats directed to himself and the decedents, which were hand-delivered to the mailbox at the Colemans' home; and that prior to May 5, 2009, JMM was aware that death threats had been made against Christopher Coleman and the decedents, and that the death threats had been delivered to the Colemans' home and through Christopher Coleman's email account.

¶ 16    The factual allegations regarding the duties voluntarily undertaken by JMM are set forth in count III. Count III alleges that JMM recognized or in the exercise of reasonable care should have recognized that in light of life-threatening email, the provision of security services was necessary for the protection of the decedents. It further alleges that JMM undertook, gratuitously or for consideration, to provide security services for the protection and safety of the decedents, which included:

> (a) monitoring, accessing, and inspecting communications sent, received, and stored on its electronic communications equipment, and conducting any necessary follow-up investigation regarding the content and source of those communications;

> (b) taking disciplinary actions against the violators of its policy;

> (c) stationing security at or around the decedents' residence;

> (d) installing a security alarm and surveillance equipment at the decedents' residence; and

> (e) monitoring and/or informing the local authorities of the numerous death threats made against the decedents.

¶ 17    Count III further alleges that JMM breached one or more of the aforementioned duties in that it:

> (a) failed to monitor, access, inspect, disclose, and conduct a follow-up investigation on the numerous death threats made against the decedents that were transmitted, received, or stored on JMM electronic communications equipment;

> (b) failed to take necessary disciplinary action, including termination, regarding the death threats made against the decedents that were transmitted, received, or stored on JMM electronic communications equipment;

> (c) failed to provide security in and around the decedents' residence after numerous death threats were made against the decedents;

- 5 -

(d) failed to monitor the decedents' residence and/or failed to install surveillance equipment in or around the residence after numerous death threats were made against the decedents; and

(e) failed to inform law enforcement authorities of the numerous death threats made against the decedents.

¶ 18    Count III also alleges that JMM's negligent performance of one or more of the aforementioned voluntary undertakings resulted in an increased risk of harm to the decedents, and that JMM's failure to perform one or more of the aforementioned voluntary undertakings resulted in harm to the decedents who, in reliance upon JMM's promises, failed to take precautions for their own protection.

¶ 19    When pared to the core, count III alleges that JMM voluntarily undertook to investigate the source of the death threats directed at the decedents, which were made or received through JMM's electronic communications systems and equipment, and to provide security at the decedents' home for the protection of the decedents; that JMM failed to perform or negligently performed these undertakings; and that JMM's negligent acts or omissions increased the risk of danger to the decedents. In our view, the factual allegations and the reasonable inferences therefrom, when liberally construed and taken in a light most favorable to the plaintiff, are sufficient to establish a duty of care owed by JMM to the decedents under a voluntary-undertaking theory.

¶ 20    We note that the trial court struggled with the "reasonable foreseeability" component of the duty analysis. In comments to the parties from the bench, the trial judge stated that in this particular case, he could not "concede in any way where this ministry is responsible for not having foreseen the brutal murder of this family by one of their employees." In order to satisfy the foreseeability component, it is not necessary that a defendant must have foreseen the precise nature of the harm or the exact manner of occurrence; it is sufficient if, at the time of the defendant's action or inaction, some harm could have been reasonably foreseen. *Marshall*, 222 Ill. 2d at 442, 856 N.E.2d at 1060-61; *Hernandez v. Rapid Bus Co.*, 267 Ill. App. 3d 519, 641 N.E.2d 886 (1994). In this case, the threats of harm were specific and targeted against the decedents. Given the gravity of the threats, it was objectively reasonable to anticipate that some harm might come to them. After reviewing the first amended complaint, we find that there are adequate factual allegations to establish that JMM was aware that specific death threats had been made against the decedents using JMM email communications, and that JMM voluntarily undertook to investigate those threats and to protect the decedents from the threatened harm.

¶ 21    In addition, we find that count III adequately alleges that JMM's negligent performance of its voluntary undertaking increased the risk of harm to the decedents. Accepting the allegations as true, it may be reasonable to infer that JMM increased the risk of harm to the decedents by failing to conduct an adequate investigation of its own communications systems and equipment, essentially electing to remain ignorant of facts concerning the source of the threats, when a reasonable person may have conducted an internal investigation of its systems and equipment. It may also be reasonable to infer that Sheri Coleman did not have an equal and independent means to investigate the threats, and that Sheri Coleman, relying on JMM's promises to investigate the threats and to provide security, did not take steps to protect herself and her children from the threatened harm.

¶ 22    Count III contains sufficient allegations of fact to state a cause of action for wrongful death based on a voluntary-undertaking theory and should not have been dismissed. It follows that count IV, the corresponding survival claim, should not have been dismissed. We pause here to note that we are only deciding a procedural issue and that neither party should take our resolution of this issue as a measure of the merits of the case. The allegations in count III are broad and the plaintiff will have to present evidence to support them. If the plaintiff can produce evidence to support its factual allegations, the finder of fact will be asked to determine whether JMM breached a duty it undertook to provide to the decedents, and if so, whether the breach was a proximate cause of the harm.

¶ 23    We next consider whether count V states a cause of action. Count V is captioned "negligent retention." It alleges that JMM knew or should have known that Christopher Coleman had a particular unfitness for his security position so as to create a danger of harm to third persons, including the decedents; that despite knowledge of Coleman's particular unfitness, JMM retained Coleman as an employee; and that the retention of Coleman as an employee was a proximate cause of the death of the decedents.

¶ 24    There are reported cases in which Illinois courts have recognized that an employer may be held liable for the negligent hiring, supervision, or retention of an employee who intentionally harmed someone while acting outside the scope of his employment. See, *e.g.*, *Kigin v. Woodmen of the World Insurance Co.*, 185 Ill. App. 3d 400, 541 N.E.2d 735 (1989); *Malorney v. B&L Motor Freight, Inc.*, 146 Ill. App. 3d 265, 496 N.E.2d 1086 (1986); *Gregor v. Kleiser*, 111 Ill. App. 3d 333, 443 N.E.2d 1162 (1982); *Easley v. Apollo Detective Agency, Inc.*, 69 Ill. App. 3d 920, 387 N.E.2d 1241 (1979). In *Kigin*, this court found that the plaintiff's complaint established a basis under section 317 of the Second Restatement of Torts (Restatement (Second) of Torts § 317 (1965)) for imposing liability on the employer of a camp counselor who molested a young camper. *Kigin*, 185 Ill. App. 3d at 402-03, 541 N.E.2d at 736.

¶ 25    Section 317 of the Second Restatement of Torts states, in pertinent part, that an employer is under a duty to exercise reasonable care to control his employee while the employee is acting outside the scope of his employment in order to prevent his employee from intentionally harming others, if (a) the employee is on the employer's premises or using a chattel of the employer and (b) the employer knows or has reason to know that he has the ability to control his employee, and knows or should know of the necessity and opportunity for exercising control over the employee. Restatement (Second) of Torts § 317 (1965). The comments in this section state that the employer is required to exercise his authority as a master to prevent his employees from misusing chattels which he has entrusted to them for use as employees of his company, and that this is true even when the employee is using the chattels for his own purposes and, therefore, outside the scope of his employment. See Restatement (Second) of Torts § 317 cmt. b (1965).

¶ 26    After reviewing the allegations in count V, we conclude that it lacks sufficient factual allegations to establish that the negligent retention of Christopher Coleman as a JMM employee was a substantial factor in bringing about the harm to the decedents. Count V does not set forth sufficient factual allegations to establish that Coleman's misuse of his position of employment was a substantial factor in bringing about the harm to the decedents. Nor does it set forth sufficient allegations of fact to establish that Coleman's misuse of the employer's chattel, a computer, was a substantial factor in bringing about the harm to the decedents. The allegations that Christopher Coleman was particularly unfit for his management position in the

security department, that his particular unfitness created a danger of harm to third persons, including the decedents, and that JMM breached its duty in retaining Coleman when it should have reasonably appreciated that Coleman's continued employment posed a risk of harm to the decedents and others are conclusions unsupported by any specific facts. Thus, count V does not fit within the parameters of section 317 of the Second Restatement of Torts, and the above-cited cases are not comparable. For the reasons stated, we find that count V fails to state a claim upon which relief may be granted and that the trial court did not err in dismissing it.

¶ 27 Accordingly, the circuit court's decision to dismiss count V with prejudice is affirmed, and its decision to dismiss counts III and IV is reversed. Counts III and IV are hereby reinstated and the cause is remanded for further proceedings consistent with this decision.

¶ 28 Affirmed in part and reversed in part; cause remanded.